# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

CHANDRA KANTOR, as Personal
Representative of the Estate of HANUMAN JOYCE,
and Survivors, CHANDRA KANTOR,
Mother, and RAMAYANA BABA,
Father,

       Plaintiff,

                                  CASE NO. 3:16CV449-RV/GRJ

v.

WARDEN JOHN SLOAN, in his
individual capacity; JOHN FARISH,
individually; BRIAN LEE CARTHAN,
individually, et al.,

       Defendants.

---

## DEFENDANTS, WARDEN JOHN SLOAN, JOHN FARISH, AND BRIAN LEE CARTHAN'S MOTION TO DISMISS THIRD AMENDED COMPLAINT AND  MEMORANDUM OF LAW IN SUPPORT THEREOF

COMES NOW, Defendants, WARDEN JOHN SLOAN, JOHN FARISH, AND

BRIAN LEE CARTHAN, by and through their undersigned counsel, and pursuant to

Rules 12(b)(6) and 12(e) of the Federal Rules of Civil Procedure, hereby move this

Court to dismiss the Plaintiff's Third Amended Complaint and as grounds states the

following:

## I.   **THEORY OF RECOVERY**

Plaintiff's Third Amended Complaint should be dismissed as Plaintiff's claims are barred by qualified immunity, sovereign immunity under Florida Statute §768.29(9)(a), and because Plaintiff cannot state a cause of action as to the allegations of Florida Statute §415.1111.

## II.   **STATEMENT OF FACTS**

1.      On September 7, 2016, Plaintiff, Chandra Kantor, filed suit for the death of inmate, Hanuman Joyce.  Plaintiff filed an Amended Complaint on October 31, 2016, with this Court subsequently permitting Plaintiff to amend her Complaint two additional times. Plaintiff filed her Third Amended Complaint on April 10, 2017. (See Complaint, Amended Complaint, Second Amended Complaint, and Third Amended Complaint, Docs. 1, 28, 71, and 95).

2.      Plaintiff's Third Amended Complaint contains eleven counts. (See Third Amended Complaint, Doc. 95).

3.      More specifically, as to Defendants Sloan, Carthan, and Farish, Plaintiff attempts to assert a claim of violation of 42 U.S.C. §1983 and the Eighth and Fourteenth Amendments for failing to provide or interfere with medical care and treatment constituting cruel and unusual punishment (Count I). Plaintiff also alleges a claim of abuse or neglect of a vulnerable adult under Florida Statute §415.1111

against Defendants Sloan, Carthan, and Farish (Count IX), and an additional claim of negligence/wrongful death under Florida law against Defendants Carthan and Farish (Count X). (See Third Amended Complaint, Doc. 95).

4.     Defendants Sloan, Carthan, and Farish were employed through the Department of Corrections during the time period in question. Plaintiff asserts that Warden Sloan's, Mr. Carthan's, and Mr. Farish's actions or inactions were taken under color of state law. (See Third Amended Complaint, ¶¶ 5, 6, and 7, Doc. 95).

5.     Warden Sloan, Mr. Carthan, and Mr. Farish are being sued in their individual capacity. (See Third Amended Complaint, ¶¶ 5, 6, and 7, Doc. 95).

6.     Warden Sloan, Mr. Carthan, and Mr. Farish are entitled to qualified immunity and statutory immunity based upon the allegations and their conduct in performing their required responsibilities. As a result, this Motion to Dismiss is necessary.

### III.    MEMORANDUM OF LAW

Under Federal Law, "when ruling on a motion to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Procedure 12(b)(6), a court must limit its consideration to the complaint, the written instruments attached to it as exhibits, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Hodge v. Orlando Utils. Comm'n, Case

No. 6:09-cv-1059-Orl-19DAB, 2009 U.S. Dist. LEXIS 116599 (M.D. Fla. Dec. 15, 2009) (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 323 (2007); GSW, Inc. v. Long Cnty. Ga., 999 F. 2d 1508, 1510 (11th Cir. 1993)).

## A.   COUNT I OF PLAINTIFF'S THIRD AMENDED COMPLAINT SHOULD BE DISMISSED AS DEFENDANTS SLOAN, CARTHAN, AND FARISH ARE ENTITLED TO QUALIFIED IMMUNITY.

In Count I, Plaintiff attempts to set forth a cause of action against Defendants Sloan, Carthan, and Farish, as well as, other Defendants for purported violations of 42 U.S.C. §1983 and the Eighth and Fourteenth Amendments, for failure to provide for and interference with medical care and treatment constituting cruel and unusual punishment. (See Third Amended Complaint, Count I, Doc. 95). However, qualified immunity protects government officials performing discretionary functions from individual liability as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Jorge T. v. Fla. Dept. of Children & Families, 250 Fed. Appx. 954, 956 (11th Cir. 2007); Hope v. Pelzer, 536 U.S. 730 (2002). "The purpose of this immunity is to allow governmental officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir.

2002) (internal quotation marks and citations omitted). Application of qualified immunity to individually named defendants is the "rule, rather than an exception" and only in the exceptional case will government actors have no immunity. Braddy v. Florida Dept. of Labor and Employment Security, 133 F.3d 797, 801 (11th Cir. 1998); see also Osterback v. Kemp, 300 F. Supp. 2d 1238, 1241 n.1 (N.D. Fla. 2003).

In order to assert the defense of qualified immunity, the conduct must violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Gonzales v. Reno, 325 F. 3d 1228, 1233 (11th Cir. 2003)(quoting Hope v. Pelzer, 536 U.S. 730, 731 (2002)). In fact, the Eleventh Circuit has discussed the standard for qualified immunity and stated "for qualified immunity to be surrendered, preexisting law must dictate, that is truly compel, (not just suggest or allow or raise a question about), the conclusion for every like - situated, reasonable government agent that what defendant is doing violates Federal law in the circumstances." Lassiter v. Ala. A&M Univ., 28 F. 3d 1146, 1150 (11th Cir. 1994), Malley v. Briggs, 475 U.S. 335, 341(1986). Essentially, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. Id. at 1366. It is thus the plaintiffs' burden to establish that the defendants' actions violated a clearly established law. Zeigler v. Jackson, 716 F. 2d 847, 849 (11th Cir. 1983). A plaintiff will not meet his burden by stating a constitutional claim by using general

terms.  <u>Dartland v. Metropolitan Dade County</u>, 866 F. 2d 1321 (11th Cir. 1989).

Further, a plaintiff is required to assert that each defendant was <u>deliberately</u>

<u>indifferent</u> to the alleged constitutional violation.  <u>See</u> <u>Ray v. Foltz</u>, 370 F. 3d 1079

(11th Cir. 2004).  Mere failure to follow state policies and procedures does not support

a claim for deliberate indifference.  <u>Id</u>. at 1085.

Entitlement to qualified immunity requires a two-step analysis. The Court must

first ascertain whether there has in fact been a constitutional deprivation, and, if so,

determine whether the law prohibiting the offensive conduct was so well established

at the time that an objectively reasonable government official would have recognized

the illegality of his conduct.  In determining whether the government actor has

violated clearly established law, the court must determine whether the government

official had fair warning that the act was clearly unconstitutional.  <u>Holloman v.</u>

<u>Harland</u>, 370 F.3d 1252, 1278 (11th Cir. 2004). While there need not be a case "on

all fours," with materially identical facts, "reasonable warning that the conduct at

issue violated constitutional rights" is required.  <u>Id</u>. at 1277-1278. This analysis not

only looks to the general legal concepts at issue, but also the application of those

concepts to the facts currently under scrutiny.

**1.**     **Defendants Sloan, Carthan, and Farish are Entitled to Qualified Immunity as Decisions Regarding Medical Care and the Transport of Inmates is a Discretionary Duty.**

The Plaintiff's Third Amended Complaint claims Warden Sloan is responsible for the implementation and enforcement of laws, rules, regulations, policies, and providing access to medical care for inmates within the FDOC, and was responsible for policies, procedures, and training regarding the transport of inmates and the execution of transfer orders. (See Third Amended Complaint, ¶5, Doc. 95). Plaintiff further alleges that Mr. Carthan and Mr. Farish were charged with enforcing laws, rules, and regulations regarding access to medical care for inmates housed in the custody of FDOC, and were both responsible for safely and efficiently caring for and transporting Mr. Joyce from CCI to RMC. (See Third Amended Complaint, ¶¶6, 7, Doc. 95).

The first step in determining whether qualified immunity applies is whether the implementation of policies concerning the transport and care of injured and sick inmates falls within Warden Sloan's, Mr. Carthan's, and Mr. Farish's discretionary authority. A government official acts within his discretionary authority when his actions "(1) 'were undertaken pursuant to the performance of his duties' and (2) were 'within the scope of his authority.'" Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir.1994)(quoting Rich v. Dollar, 841 F.2d 1558 (11th Cir.1988)). This determination turns on "whether the act complained of, if done for a proper purpose, would be

within, or reasonably related to, the outer perimeter of an official's discretionary duties." Harbert Int'l, Inc. V. James, 157 F.3d 1271, 1282 (11th Cir. 1998).

Decision making as to inmate medical care and transportation policies are at the very least related to "the outer perimeter" of a prison official's discretionary authority. Under Florida Statute § 944.14, "it shall be the duty of the wardens to supervise the government, discipline, and policy of the state correctional institutions, and to enforce all orders, rules and regulations." Fla. Stat. § 944.14; see also Townsend v. Jefferson Cty., 601 F.3d 1152, 1158 (11th Cir. 2010), Fla. Admin. Code 33-603.201 (2008), and Fla. Admin. Code 33-103.008 (2013).

Here, Plaintiff alleges that Defendant Sloan was deliberately indifferent by failing to implement a transfer order, failing to comply with the Florida Administrative Code, failing to implement various policies, and inadequately training officers, thereby leading to the Decedent's death. (See Third Amended Complaint, ¶127, Doc. 95). Further, Plaintiff alleges that Warden Sloan failed to "act or abate a known risk of widespread and long history of abusive and deliberately indifferent failure to provide medical treatment by Corizon and its staff." (See Third Amended Complaint, ¶127(k), Doc. 95).

Likewise, Plaintiff alleged that Mr. Carthan and Mr. Farish were deliberately indifferent by failing to "demand" discharge instructions from Baptist Hospital,

failing to obtain advice from medical care providers at Baptist Hospital, and failing to request or insist on medical assistance during transport among other things. (See Third Amended Complaint, ¶130, Doc. 95). Assuming for purposes of this Motion that Plaintiff's allegations are true, unless Plaintiff can show the violation of a constitutional right, then Warden Sloan is protected by qualified immunity as the treatment, and therefore transport, of sick and injured inmates is a discretionary function of prison officials. Likewise, the training of officers is a discretionary function as well.

Mr. Carthan's and Mr. Farish's actions would also fall under the umbrella of discretionary authority in transporting Inmate Joyce as the transport of inmates is within their discretionary authority as correctional officers.

## 2. Defendants Sloan, Carthan, and Farish are Entitled to Qualified Immunity as Plaintiff Cannot Show Defendants Violated Decedent's Constitutional Rights.

Because Warden Sloan, Mr. Carthan, and Mr. Farish were acting within their discretionary authority, the burden shifts to Plaintiff to show that a constitutional right was violated by the Defendants. Saucier v. Katz, 533 U.S. 194, 201 (2001). The Eighth Amendment imposes a duty on prison officials to provide medical care to inmates. Estelle v. Gamble, 429 U.S. 97, 290-291 (1976). However, not every claim by a prisoner "that he has not received adequate medical treatment states a violation

of the Eighth Amendment." Id. at 291. Plaintiff fails to sufficiently allege that Warden Sloan, Mr. Carthan, and Mr. Farish had the requisite knowledge to be held responsible for any violation of the Decedent's constitutional rights under Count I.

      **a.**    **Count I of the Third Amended Complaint Fails to Show Knowledge on the Part of Defendants Sloan, Carthan, and Farish.**

In order to properly set forth a cause of action for cruel and unusual punishment within the medical context, plaintiff must produce sufficient evidence of a serious medical need, defendant's deliberate indifference to that need, and causation. Mann v. Taser Int'l, Inc., 588 F. 3d 1291, 1306-07 (11th Cir. 2009). Knowledge on behalf of the defendant is integral to this claim. For instance, in the context of Eighth Amendment claims of deliberate indifference regarding confinement conditions, the analysis of which is virtually identical to claims involving medical needs, the Supreme Court has held that:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer v. Brennan, U.S. 825, 837 (1994). In such cases, the plaintiff must show more than a generalized awareness of risk and much more than a mere awareness of an

inmate's problematic nature. <u>Carter</u>, 352 F.3d at 1350. In fact, the defendant must have *actual knowledge* that an inmate faced a substantial risk of serious harm. <u>Caldwell v. Warden, FCI Talladega</u>, 748 F.3d 1090, 1098-1099 (11th Cir. 2014). Without knowledge, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." <u>Farmer</u>, 511 U.S. at 838.

Alternatively, where a pleading does not allege a defendant's personal knowledge of an incident, knowledge must be demonstrated through evidence of a "widespread pattern" of constitutional violations. <u>Keith v. DeKalb County, Georgia</u>, 749 F.3d 1034 at 1049 (11th Cir.2014). For instance, in <u>Valdes v. Crosby</u>, 450 F.3d 1231 at 1244 (11th Cir. 2006), the court held that it was clearly established that a supervisor "charged with directing the governance, discipline, and policy of the prison and enforcing its rules, and regulations" could "face liability under Section 1983 predicated on his failure to take reasonable steps in the face of a history of widespread abuse or his adoption of custom or policies which result in deliberate indifference." <u>Valdes</u>, 450 F.3d at 1244. The Eleventh Circuit has also indicated that "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than

isolated occurrences." <u>Keith v. DeKalb County, Georgia</u>, 749 F.3d 1034, 1048 (11th Cir.2014).

Plaintiff argues in Count I that Warden Sloan, Mr. Carthan, and Mr. Farish violated Joyce's Eighth and Fourteenth Amendment right against cruel and unusual punishment through their failure to provide medical care and treatment to the Decedent, Mr. Hanuman Joyce. (<u>See</u> Third Amended Complaint, Count I, Doc. 95). Plaintiff claims <u>generally</u> that the "Defendants" were aware of Joyce's medical treatment and care. (<u>See</u> Third Amended Complaint, ¶123, Doc 95). However, Plaintiff contradicts this purported knowledge of the Defendants a number of times, alleging that Mr. Carthan and Mr. Farish failed to take a number of actions that allegedly would have put them on notice as to the Decedent's status. For instance, Mr. Carthan and Mr. Farish failed to: (1) seek or demand discharge instructions from Baptist Hospital; (2) failed to monitor Mr. Joyce; (3) failed to "request and insist" on the advice of a physician or a medical assistant prior to and during transport; (4) failed to request and insist on a complete briefing and instructions prior to transport; and (5) failed to ensure that the chief health officer or physician was aware of Mr. Joyce's condition. (<u>See</u> Third Amended Complaint, Count I, ¶130, Doc. 95).

Plaintiff provides even more support to the argument that Warden Sloan, Mr. Carthan, and Mr. Farish did not possess knowledge of the Decedent's condition, by

affirmatively indicating that they were unaware of his condition, alleging that:

> (77)    "None of the doctors or medical personnel attending to Mr. Joyce had any discussion with anyone from FDOC regarding Mr. Joyce's condition, transport, or what to do in the event that Mr. Joyce's condition further deteriorated." (See Plaintiff's Third Amended Complaint, ¶ 77, Doc. 95).

> (78)    "Baptist Hospital discharged Mr. Joyce into FDOC custody, unaware of the active encephalitis affecting Mr. Joyce's brainstem and deep cerebral nuclei." (See Plaintiff's Proposed Third Amended Complaint, ¶ 78, Doc. 95).

> (91)    "Carthan and Farish were not informed of Mr. Joyce's grave medical condition nor were they informed of the increased risk of substantial harm or death posed by shackling Mr. Joyce given his seizure disorder." (See Plaintiff's Third Amended Complaint, ¶ 91, Doc. 95).

In fact, Plaintiff alleges that even Baptist Hospital was unaware of the extent of the Decedent's ailment, stating, "Baptist Hospital discharged Mr. Joyce into FDOC custody, unaware of the active encephalitis affecting Mr. Joyce's brainstem and deep cerebral nuclei." (See Plaintiff's Third Amended Complaint, ¶ 78, Doc. 95).

Additionally, while Plaintiff attempts to allege certain defendants had knowledge of the decedent's condition during transport, there is no allegation that Warden Sloan was aware of the Decedent's condition or the potential effects a lengthy transport could have had on him. In fact, Plaintiff again contradicts her

assertion, alleging that Defendants Dr. Cherry, Dr. Ogunsanwo, and Nobles approved the transfer of the Decedent from Baptist Hospital to the FDOC without "fully informing FDOC utilization management of the conditions that required approval for an ambulance and medical staff for the transport." (See Third Amended Complaint, ¶57(f), Doc. 95). The Complaint also indicates that Defendants Dr. Cherry, Dr. Ogunsanwo, and Nobles failed to advise the FDOC that "Mr. Joyce had already suffered a witnessed seizure while in route to the hospital, and therefore, that shackling Mr. Joyce in the van could substantially increase the risk of harm or death should Mr. Joyce have a seizure while in transit to RMC." (See Third Amended Complaint ¶57(j), Doc. 95).

As to Warden Sloan, Plaintiff alleges the conclusion that he is liable through his failure to establish and implement policies, practices, and procedures designed to assure that the Plaintiff received adequate medical care and treatment, including access to medical staff and treatment during transport, and his failure to instruct, supervise and train employees and agents to ensure inmates are not improperly denied access to medical care or left untreated. (See Third Amended Complaint, Count I, ¶125, Doc. 95). Plaintiff further concludes in a lone subparagraph (¶127(k)) that Warden Sloan "failed to act to abate the known risk of a widespread and long history

-14-

of abuse and deliberately indifferent failure to provide medical treatment by Corizon and its staff." (See Third Amended Complaint, Count I, ¶127(k), Doc. 95).

However, Plaintiff does not provide any factual evidence of past incidents or any evidence of a pattern of activity evidencing a flawed system or policies for transporting sick and injured inmates to and from medical facilities, other than the lone cursory allegation of Corizon's conduct. (See Third Amended Complaint, ¶127(k), Doc. 95). Statements of the elements of a cause of action supported by "mere conclusory statements do not suffice." Bell Atlantic Corp. V. Twombly, 550 U.S. 544, 555-556 (2007). The Plaintiff must plead factual conduct that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. There is nothing in the Third Amended Complaint indicating Warden Sloan had any specific reason to believe or know that the relevant policies created a risk to inmate health and safety. (See Third Amended Complaint, Doc 95).

3.  **The State of the Law did Not Give Defendants Sloan, Carthan, and Farish Fair Warning that Their Alleged Conduct was Unconstitutional.**

Even if the Plaintiff proves a constitutional violation by Warden Sloan, Mr. Carthan, and Mr. Farish, the Plaintiff must also prove that the right was clearly established at the time of the alleged violation. Officers have a right to "fair notice"

that their conduct deprives a victim of a constitutional right. Hope, 536 U.S. at 739. For a right to be "clearly established," it must be developed by previous case law so as to make it obvious to a reasonable government actor that his actions violate federal law. Anderson v. Creighton, 483 U.S. 635, 640 (1987). Under the qualified immunity doctrine, the conduct which is the basis for suit must violate rights of which a reasonable person would have known. Harlow, 457 U.S. at 818. The State of the law must give the guards fair warning that their alleged conduct was unconstitutional. Cottone v. Jenne, 326 F. 3d 1352, 1359 (11th Cir. 2003).

At the time of the alleged violation, it was well settled that prison officials' deliberate indifference to prisoners' serious medical needs could give rise to a constitutional claim. See Estelle v. Gamble, 429 U.S. 97. However, making this determination requires an inquiry into whether a defendant official was aware of "specific facts" from which an inference could be drawn that a substantial risk of harm existed. Farmer, 511 U.S. at 837. In other words, liability is reliant on knowledge.

This principle is illustrated by cases addressing inmate safety, which hold that guards must have specific notice of the potential of harm to an inmate for their actions or inactions to rise to the level of deliberate indifference. Otherwise, conduct

constitutes simple negligence. <u>Carter v. Galloway</u>, 352 F.3d 1346, 1349 (11th Cir. 2003). For example, in <u>Carter v. Galloway</u>, the Eleventh Circuit held that the defendants's conduct failed to rise to the level of deliberate indifference when they placed an inmate in a cell with another inmate with a "well documented history of prison disobedience and had been prone to violate." The court reasoned that the defendants were not aware of a risk of serious harm as the plaintiff had not actually informed the guard that he feared the inmate in question or that the inmate had clearly threatened him. <u>Carter</u>, 352 F. 3d at 1349. The court held that the defendants had no need for qualified immunity because the plaintiff's deliberate indifference claim failed. <u>Id</u>. The court indicated in a footnote, however, that defendants were also entitled to qualified immunity because the law was not clearly established in plaintiff's favor, as it did not warn defendants that they could be liable without awareness of harm from another inmate or correctional officer. <u>Id</u>. at 1349 (Fn.10).

Additionally, as explained above, when a pleading does not allege a defendant's personal knowledge of an incident, the Eleventh Circuit has held that knowledge must be demonstrated through evidence of a "widespread pattern" of constitutional violations. <u>Keith v. DeKalb County, Georgia</u>, 749 F.3d 1034 at 1049 (11th Cir.2014).

-17-

Here, Plaintiff fails to properly set forth any knowledge on the part of Warden Sloan, Mr. Carthan, and Mr. Farish of widespread patterns of medical transport constitutional violations.  Instead, Plaintiff only makes a blanket allegation that there was a widespread and long history of abuse by Corizon.  (See Third Amended Complaint, ¶127(k), Doc. 95).  As a result, Warden Sloan, Mr. Carthan, and Mr. Farish are entitled to qualified immunity.

**B.      COUNT I OF PLAINTIFF'S THIRD AMENDED COMPLAINT SHOULD BE DISMISSED AS IT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

A pleading must contain a statement of the claim showing an entitlement to relief.  Fed. R. Civ. Proc. 8.  To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint must plead factual content which allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007).  Although, the factual allegations must be accepted as true, legal conclusions are not entitled to the assumption of truth.  Ashcroft v. Iqbal, 556 U.S. 662, 679-680 (2009).  Only well pleaded factual allegations are taken as true and only reasonable inferences will be drawn in the favor of the plaintiff.  Oladeinde v. City of Birmingham, 963 F. 2d 1481, 1485 (11th Cir. 1992).

In considering a motion to dismiss, the court should identify conclusory allegations that are not entitled to the assumption of truth and make certain that legal conclusions are supported by factual allegations. Randall v. Scott, 610 F. 3d 701, 709-710 (11th Cir. 2010). "Conclusory allegations unwarranted deductions of fact or legal conclusions masquerading as facts do not prevent dismissal." Associated Builders, Inc. v. Alabama Power Company, 505 F. 2d 97, 100 (6th Cir. 1974). The pleading must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). Although the court must accept as true all of the allegations in a complaint, this does not apply to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While legal conclusions can provide the framework of a complaint, it must be supported by factual allegations. Id.

Some factual detail in the pleadings is necessary to the adjudication of §1983 claims where it must be determined whether a defendant's actions violated a clearly established right. GJR Investments, Inc. v. County of Escambia, Fla., 132 F. 3d 1359, 1367 (11th Cir. 1998). Plaintiff's Complaint must specify which claims are against which defendant to give each defendant fair notice. Meduty v. Georgia Department of Administrative Services, 614 Fed. App'x 401, 403 (11th Cir. 2015).

-19-

1. **Plaintiff Fails to State a Cause of Action in Count I as to Warden Sloan, Mr. Carthan, and Mr. Farish.**

Count I alleges a purported violation of the constitutional rights under the Eighth and Fourteenth Amendments against "Defendants, Sloan, Ogunsanwo, Carthan, Carthan, Cherry, Nobles, and Corizon" through their failure to provide or interference with medical care and treatment constituting cruel and unusual punishment. (See Third Amended Complaint, Count I, Doc. 95). Plaintiff's Eighth Amendment allegation requires that the Plaintiff produce sufficient evidence of a serious medical need, Defendant's <u>deliberate indifference</u> to that need, and causation. <u>Mann v. Taser Int'l, Inc.</u>, 588 F.3d 1291, 1306-1307 (11th Cir. 2009).

The Eleventh Circuit has defined a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Mann v. Taser Int'l, Inc.</u>, 588 F.3d 1291, 1306-1307 (11th Cir. 2009) (quoting <u>Hill v. Dekalb Reg'l Youth Det. Ctr.</u>, 40 F.3d 1176, 1187 (11th Cir. 1994)). In the alternative, a serious medical need may be "determined by whether a delay in treating the need worsens the condition." <u>Id</u>. at 1307.

The second requirement, deliberate indifference to an inmate's serious medical need, occurs when prison employees or officials <u>know of</u> and disregard an excessive

risk to inmate's health or safety. Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1307. To

establish deliberate indifference, a plaintiff must demonstrate: "(1) subjective

knowledge that serious harm is possible; (2) disregard of that risk; and (3) conduct

that is more than mere negligence." Brown v. Johnson, 387 F. 3d 1344, 1351 (11th

Cir. 2004). In other words, plaintiff must demonstrate the existence of two

components, one objective, and one subjective. Caldwell v. Warden, FCI Talladega,

748 F. 3d 1090, 1099 (11th Cir. 2014).  To satisfy the objective component, the

plaintiff must produce evidence that the defendant disregarded a known risk by

failing to respond to it in an objectively reasonable manner. To satisfy the subjective

component, the plaintiff must produce evidence that the defendants actually knew that

the inmate faced a serious risk of harm.  Id.

As previously noted, the Supreme Court in Estelle v. Gamble has cautioned

that not every allegation of inadequate medical treatment constitutes a constitutional

violation. Estelle v. Gamble, 429 U.S. 97, 105-106 (1976). "In the medical context,

an inadvertent failure to provide adequate medical care cannot be said to constitute

'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience

of mankind.'" Id. at 106-107. "In order to state a cognizable claim, a prisoner must

allege acts or omissions sufficiently harmful to evidence deliberate indifference to

serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." Id.

In regard to the pleading itself, the plaintiff must set forth facts showing that there was a  "strong likelihood" of injury.  Brown v. Hughes, 894 F. 2d 1533, 1537 (11th Cir. 1990).  The Eleventh Circuit does not "allow the advantage of hindsight to determine whether conditions of confinement amounted to 'cruel and unusual' punishment."  Purcell ex rel. Estate of Morgan v. Toombs Cnty., 400 F. 3d 1313, 1320 (11th Cir. 2005).

In the instant case, Plaintiff has failed to plead factual allegations demonstrating that Defendants Sloan, Carthan, and Farish were cognizant of the decedent's serious medical needs.  As to whether a defendant possesses the requisite actual knowledge, the Eleventh Circuit has reasoned that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Campbell v. Sikes, 169 F.3d 1353, 1363–64 (11th Cir. 1999) (quoting Farmer v. Brennan, 511 U.S. 825, 837-38) (emphasis added).  In this case, Plaintiff makes the conclusory allegation that Defendants had knowledge, and at best alleges negligence on behalf of Defendants Sloan, Carthan, and Farish. (See Third Amended Complaint, ¶123, Doc. 95).

However, not only must a plaintiff plead facts indicating that an individual possessed actual knowledge of an inmate's condition, the plaintiff must also plead facts demonstrating <u>intent</u> on behalf of the defendants to withhold or delay medical treatment. In other words, pleading facts amounting to "mere negligence" is not sufficient. <u>Brown v. Johnson</u>, 387 F. 3d 1344, 1351.

To illustrate this point, courts have repeatedly drawn distinctions between cases alleging medical malpractice, and those rising to the level of deliberate indifference. The Supreme Court's reasoning in <u>Estelle</u> is again instructive:

> A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.

<u>Estelle</u>, 429 U.S. at 106. Unlike actions alleging deliberate indifference, negligence and medical malpractice claims do not require a plaintiff to demonstrate <u>intent on behalf</u> of a defendant to withhold or delay medical services. As stated by the Eleventh Circuit, "[<u>K</u>]nowledge of the need for medical care and intentional refusal to provide that care has consistently been held to surpass negligence and constitute deliberate indifference." <u>Carswell v. Bay Cty.</u>, 854 F.2d 454, 457 (11th Cir. 1988) (emphasis added).

-23-

There is nothing present in the Third Amended Complaint that provides Defendants Carthan or Farish were aware of the Decedent's condition other than Plaintiff's allegation that as lay persons, Mr. Carthan and Mr. Farish should have recognized the symptoms of "weakness and illness." (See Third Amended Complaint, ¶92, Doc. 95). As set out in detail above, Plaintiff alleges that both Mr. Carthan and Mr. Farish had knowledge of the Decedent's condition, yet at the same time alleges that Mr. Carthan and Mr. Farish failed to obtain information from various medical care providers, and further, that medical care providers failed to give them certain information. (See Third Amended Complaint, Count I, Doc. 95).

Likewise, Plaintiff sets forth only conclusory allegations as to Warden Sloan, alleging that he was in contact with Nobles during the Decedent's hospitalization. Plaintiff therefore fails to factually demonstrate that Warden Sloan was aware of the Decedent's condition on March 2, 2015. Because Plaintiff has failed to plead actual personal knowledge on behalf of Warden Sloan, under Valdes, Plaintiff must put forth factual allegations demonstrating that Mr. Sloan failed to take reasonable steps "in the face of a history of widespread abuse" to correct the alleged problem, or show that "his adoption of custom or policies" resulted in deliberate indifference. Valdes 450 F.3d at 1244. To do so, evidence must be alleged demonstrating violations that are "obvious, flagrant, rampant and of continued duration, rather than isolated

-24-

occurrences." <u>Keith</u>, 749 F.3d at 1049. Plaintiff fails to plead anything approaching this standard. Rather she sets forth the one conclusory allegation that Warden Sloan failed to abate a known risk of widespread, and long history of, abusive and deliberately indifferent failure to provide medical treatment by Corizen. (<u>See</u> Third Amended Complaint, ¶ 127(k). Therefore, Plaintiff's Complaint as to Defendants, Sloan, Carthan, and Farish should be dismissed for failure to state a claim upon which relief can be granted.

**C.    DEFENDANTS SLOAN, CARTHAN, AND FARISH ARE ENTITLED UNDER FLORIDA STATUTE 768.28(9) TO SOVEREIGN IMMUNITY ON PLAINTIFF'S STATE LAW CLAIMS UNDER COUNTS IX AND X (ABUSE AND NEGLECT OF A VULNERABLE ADULT FLORIDA §415.1111 AND NEGLIGENCE/WRONGFUL DEATH).**

In Count IX Plaintiff alleges that Defendants Sloan, Carthan, and Farish according to Florida Statute 415.1111, breached a "duty of care by neglect in careless actions" while in the scope of their employment. However, pursuant to Florida Statute 768.28(9)(a) these claims are barred. In Count X, Plaintiff alleges that Defendants Farish and Carthan breached a duty of care owed to Mr. Joyce "which included a duty not to withhold or deprive him of medical care for a known serious medical need, discernable by a lay standard or care that has been medically prescribed by a physician." Both counts must be dismissed as the express statutory language of

768.28(9)(a) prevents individuals from being held personally liable in cases such as

the one at hand. Specifically, Florida Statute § 768.28(9)(a) provides:

> No officer, employee, or agent of the sate or of any of its
> subdivisions shall be held personally liable in tort or named
> as a party defendant in any action for any injury or damage
> suffered as a result of any act, event, or omission of action
> in the scope of her or his employment or function, unless
> such officer, employee, or agent acted in bad faith or with
> malicious purpose or in a manner exhibiting wanton, and
> willful disregard of human rights, safety or property.

Florida Statute § 768.28(9)(a)(emphasis added).

Additionally, the immunity provided by section 768.28(9)(a) "is both an

immunity from liability *and* an immunity from suit, and the benefit of this immunity

is effectively lost if the person entitled to assert it is required to go to trial." Furtado

v. Yun Chung Law, 51 So.3d 1269, 1277 (Fla. 5th DCA 2011). In Furtado, the court

goes on to reason:

> Just as Justice Kennedy discussed qualified immunity with
> regard to section 1983 claims, in Saucier, qualified
> immunity in a state claim is also an issue the trial court
> should address as soon as possible because the trial court
> 'must act as a gatekeeper....and should terminate civil
> proceedings when the immunity applies.

Furtado v. Yun Chung Law, 51 So.3d 1269, 1277 (Fla. 5th DCA 2011)(quoting

Saucier v. Katz, 533 U.S. 194 (2001)).

As the foregoing indicates, Warden Sloan, Mr. Carthan, and Mr. Farish lacked the requisite knowledge to push their actions into the realm of deliberate indifference. Accordingly, their actions fail to rise to the standard of those characterized by a "wanton and willful disregard of human rights, safety, or property." Therefore, Plaintiff's claims in Counts IX and X against Warden Sloan, Mr. Carthan, and Mr. Farrish should be dismissed.

**D.   PLAINTIFF HAS FAILED TO STATE A CAUSE OF ACTION FOR ABUSE OR NEGLECT OF A VULNERABLE ADULT UNDER FLORIDA STATUTE §415.1111 AS TO DEFENDANTS SLOAN, CARTHAN, AND FARISH.**

Plaintiff in Count IX  (¶¶ 200-213) attempts to assert a cause of action for abuse or neglect of a vulnerable adult under Florida Statute §415.1111.  Pursuant to Florida Statute §415.1111 "a vulnerable adult who has been abused, neglected, or exploited as specified in this Chapter has a cause of action against any perpetrator and may recover actual and punitive damages for such abuse, neglect, or exploitation". Florida Statute §415.1111.

The Florida Adult Protective Services Act (APSA) "was enacted to protect vulnerable adults from abuse, neglect, and exploitation by caregivers.... It provides for protective services, including protective supervision, placement, and in-home and community-based services, as well as, for protective services interventions when the

-27-

vulnerable adult lacks the capacity to consent." <u>Martin v. Wood</u>, 648 Fed. Appx. 911, 912 (11th Cir. 2016) (citing <u>Bohannon v. Shands Teaching Hosp. & Clinics, Inc.</u>, 983 So. 2d 717, 718 (Fla. 1st DCA 2008)). The Legislature enacted these protections after recognizing "that there are many persons in this state who, because of age or disability, are in need of protective services." § 415.101, Fla. Stat. Ann. (titled, "Adult Protective Services Act; legislative intent").

To state a cause of action under § 415.1111, a complaint must set forth factual allegations which demonstrate that the plaintiff or the plaintiff's decedent was a "vulnerable adult," that the defendant was a "caregiver" as defined by section 415.102(4), and that the defendant committed "abuse" or "neglect" or "exploitation" as defined by section 415.102 with respect to the vulnerable adult. <u>Bohannon v. Shands Teaching Hosp. & Clinics, Inc.</u>, 983 So. 2d 717, 721 (Fla. 1st DCA 2008) (holding that, while plaintiff satisfied the "vulnerable adult" requirement due to his qualifying for disability benefits for diabetes and nephrosclerosis, plaintiff failed to plead "abuse," "neglect," or "exploitation."); <u>see also, Tenet S. Florida Health Sys. v. Jackson</u>, 991 So. 2d 396, 399 (Fla. 3d DCA 2008) (holding that the cause of action was for medical negligence as Plaintiff failed to qualify under the APSA).

§ 415.102 (28), Fla. Stat. Ann. states:

> "Vulnerable adult" means a person 18 years of age or older whose ability to perform the normal activities of daily living or to provide for his or her own care or protection is impaired due to a mental, emotional, sensory, long-term physical, or developmental disability or dysfunction, or brain damage, or the infirmities of aging.

The phrase "activities of daily living" means "functions and tasks for self-care, including ambulation, bathing, dressing, eating, grooming, toileting, and other similar tasks." Florida Statute §415.102(2).

Such a person is a "vulnerable adult" if his or her ability to perform the normal "functions and tasks for self-care, including ambulation, bathing, dressing, eating, grooming, toileting, and other similar tasks" is impaired due to a mental, emotional, sensory, long-term physical, or developmental disability or dysfunction, or brain damage, or the infirmities of aging. Grasso v. Grasso, 8:13-CV-3186-T-33AEP, 2016 WL 1271545, at *7 (M.D. Fla. Mar. 31, 2016), appeal dismissed (June 24, 2016).

To plead a claim under the APSA, a plaintiff must plead more than "mere conclusions tracking the language of the statutory definitions, unsupported by facts." Bohannon v. Shands Teaching Hosp. & Clinics, Inc., 983 So. 2d 717, 721 (Fla. 1st DCA 2008). Such a pleading practice renders the Complaint "legally insufficient." Id. (citing to Ellison v. City of Fort Lauderdale, 175 So.2d 198, 200 (Fla.1965) and

-29-

Silvers v. Drake, 188 So.2d 377 (Fla. 1st DCA 1966)); see also, Shave v. Stanford

Coins & Bullions, Inc., Blue Sky L. Rep. P 74774 (S.D. Fla. 2009) ("Plaintiff has

failed to allege the elements of the statutory definition.... Rather, Plaintiff has only

stated that Plaintiff is vulnerable in a conclusory fashion, and thus cannot pass the

Twombly test.").

Here, Plaintiff has failed to plead sufficient plausible facts demonstrating that

Plaintiff suffered from a "mental, emotional, sensory, long-term physical, or

developmental disability or dysfunction" impairing his ability to: 1) "perform the

normal functions and tasks for self care" or 2) "provide for his own care or

protection."

Under Count IX of the Third Amended Complaint, Plaintiff alleges:

> 202. Hanuman Joyce met the definition of a 'vulnerable adult' in that he was an adult whose ability to perform the normal activities of daily living or to provide for his own care was impaired due to a number of severe medical conditions for which he was actively receiving hospital treatment.

Presumably, the "severe medical conditions" relate to the following incorporated

paragraph:

> 32. Admission diagnoses included Influenza B, seizure, lupus flare, hyperkalemia, metabolic acidosis, elevated LFT's, anemia, lupus nephritis (an inflammation caused when lupus attacks the kidneys), and acute renal failure.

However, of all of these "severe medical conditions," only the Decedent's prior diagnosis of lupus can be considered a "long-term physical" medical condition. The status as a "medical condition" is not the end of the inquiry, however. To satisfy the statute's definition, such a medical condition must be *disabling*.

Plaintiff discusses the Decedent's lupus diagnosis with the following paragraphs:

19. In 2010, at the age of 17, MR. JOYCE was diagnosed with systemic lupus erythematosus (lupus).

20. With adequate medical supervision and treatment, lupus, an auto-immune disease, is not life-threatening.

21. In 2012, MR. JOYCE graduated high school and was employed by Macho Products as a shipping assistant until 2013.

26. Lupus, or 'Systemic Lupus Erythematosus', has a 90% survival rate of normal life span."

(See Third Amended Complaint, ¶¶ 19-21, 26, Doc. 95).  In sum, according to Plaintiff's Third Amended Complaint, Decedent, after being diagnosed with lupus, went on to graduate high school and find employment, with an excellent prognosis for living a long life.

At no point in the Third Amended Complaint (other than one conclusory statement in ¶ 202, which inaccurately restates the legal definition of a "vulnerable

adult"), does Plaintiff attempt to address in what manner Decedent's ability to move around on his own, bathe, dress, feed, groom, or look after himself suffered from any condition. Instead, Plaintiff's Third Amended Complaint, asks the Court to broaden the applicable statutory definitions and conclude that all persons - when such a person is sick with the flu - is entitled to statutory protection under the APSA.

Plaintiff has not met this burden of pleading. Instead, by including references to Decedent's high school graduation, work history, and excellent prognosis for his lupus diagnosis, Plaintiff has pled the Decedent *out* of a claim in Count IX.

Adding to this, Plaintiff fails to allege that Defendants assumed responsibility for the frequent and regular care of the Decedent during his incarceration and had any type of understanding regarding the Decedent's condition or that they were in a care giving role which existed.  As a result, Plaintiff has failed to state a cause of action under Florida Statute §415.1111.

### III.   <u>CONCLUSION</u>

WHEREFORE, Defendants respectfully request this Honorable Court grant Defendants Sloan, Carthan, and Farish's Motion to Dismiss Plaintiff's Third Amended Complaint.

## CERTIFICATE OF COMPLIANCE WITH NORTHER DISTRICT OF FLORIDA LOCAL RULE 7.1(F)

Defendants' Motion to Dismiss Third Amended Complaint and Memorandum of Law complies with the word limitations of N.D. Fla. Loc. R. 7.1(F) because it contains 7,023 and is typed in 14 point font.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically via CM/ECF with a copy also being provided to the following on this _____ day of May, 2017:

| | |
|---|---|
| James V. Cook<br>Law Office of James Cook<br>314 West Jefferson Street<br>Tallahassee, FL 32301<br>cookjv@gmail.com<br>*Attorney for Plaintiff* | Jack Meyerson<br>Edward Skipton<br>Myerson & O'Neill<br>1700 Market Street, Suite 3025<br>Philadelphia, PA 19103<br>jmeyerson@meyersonlawfirm.com<br>eskipton@meyersonlawfirm.com<br>Kmeola@meyersonlawfirm.com<br>*Attorney for Plaintiff* |

| | |
|---|---|
| Robert L. Herbst<br>Herbst Law PLLC<br>420 Lexington Avenue, Suite 300<br>New York, NY 10170<br>rherbst@herbstlawny.com<br>*Attorney for Plaintiff* | J. Nixon Daniel, III<br>John R. Zoesch, III<br>Beggs & Lane, RLLP<br>501 Commendencia Street (32502)<br>P. O. Box 12950<br>Pensacola, FL 32591<br>jnd@beggslane.com<br>jrz@beggslane.com<br>*Attorneys for Baptist Hospital, Inc.,*<br>*Surendar S. Veera, M.D.,*<br>*Scott M. Hof, M.D. and Amanda Sneed* |
| Michael W. Kehoe<br>114 East Gregory Street, 2nd Floor<br>Pensacola, FL 32502<br>michael.kehoe@qpwblaw.com<br>melanie.miller@qpwblaw.com<br>rachel.broughton@qpwblaw.com<br>*Attorney for Haitham Qader, M.D.* | Jami M. Kimbrell<br>Joseph E. Brooks<br>BROOKS LAW<br>2629 Mitcham Drive<br>Tallahassee, FL 32308<br>jmk@sbmlaw.net<br>jeb@sbmlaw.net<br>awh@sbmlaw.net<br>*Attorneys for Corizon, Inc., Christine*<br>*Nobles and Daniel Cherry* |

| | |
|---|---|
| Michelle L. Hendrix<br>Vernis & Bowling<br>315 South Palafox Street<br>Pensacola, FL 32502<br>mhendrix@florida-law.com<br>lodom@florida-law.com<br>vtaylor@florida-law.com<br>*Attorney for Olugbenga Ogunsanwo,*<br>*M.D.* | Beth J. Leahy<br>Jose Pagan<br>Edward Ibeh<br>Walton Lantaff Schroeder & Carson,<br>LLP<br>110 East Broward Blvd., Suite 2000<br>Fort Lauderdale, FL 33301-3503<br>bleahy@waltonlantaff.com<br>aharris@waltonlantaff.com<br>jpagan@waltonlantaff.com<br>gcook@waltonlantaff.com<br>eibeh@waltonlantaff.com<br>aharris@waltonlantaff.com<br>*Attorneys for Jonathan Hutchins,*<br>*Curness Bolen, Kenneth Shaw,*<br>*Charles Burris* |

/s/ E. Nicole Palmer
E. Nicole Palmer
Florida Bar No.: 15554
WADE, PALMER & SHOEMAKER, P.A.
14 North Palafox Street
Pensacola, FL 32591-3510
(850) 429-0755
Primary: npalmer@wpslawyers.com
Secondary: ssmith@wpslawyers.com
Secondary:    cschreiner@wpslawyers.com
*Attorney for Defendants, Warden John Sloan,*
*John Farish and Brian Lee Carthan*