Case 3:16-cv-00449-RV-GRJ   Document 196-2   Filed 04/11/18   Page 1 of 3

6/20/2017 — Chandra Kantor vs Warden John Sloan, et al.
Deposition of Christine Nobles - transcript   3:16-CV-449-RV-GRJ   1 (1)

```
 1              UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF FLORIDA
 2                  TALLAHASSEE DIVISION

 3

 4    CHANDRA KANTOR,

 5    Plaintiff,

 6    vs.                          CASE NO. 3:16-cv-449-RV-GRJ

 7    WARDEN JOHN SLOAN, et al.,

 8         Defendants.
      _____/
 9

10    VIDEO DEPOSITION OF:    CHRISTINE NOBLES

11    AT THE INSTANCE OF:     THE PLAINTIFF

12    DATE:                   JUNE 20, 2017

13    TIME:                   COMMENCED: 10:00 A.M.

14    LOCATION:               PREMIER REPORTING
                              114 W. 5TH AVENUE
15                            TALLAHASSEE, FL

16    REPORTED BY:            DEBRA R. KRICK
                              Court Reporter and
17                            Notary Public in and for
                              State of Florida at Large

18

19

20

21              PREMIER REPORTING
                114 W. 5TH AVENUE
22              TALLAHASSEE, FLORIDA
                 (850) 894-0828
23

24                                       EXHIBIT
                                            2
25
```

EXHIBIT 2

Case 3:16-cv-00449-RV-GRJ   Document 196-2   Filed 04/11/18   Page 2 of 3

6/20/2017                                    Chandra Kantor vs Warden John Sloan, et al.
Deposition of Christine Nobles - transcript    3:16-CV-449-RV-GRJ              29 (110 - 113)

Page 110

BY MR. ZOESCH:
Q  -- who issues this order?
A  The first page I am not familiar with.
Q  Okay. Go to the second page, called the SYSM.
A  Yes.
Q  Who issues this?
A  I initiated this.
Q  Okay. You initiated it. Did someone ultimately sign off on it beyond you within DOC?
A  I send it to the DOC, and it's endorsed by the DOC. On the back page, you will see, Attention Classification Supervisor, Century, RMC, this is your authority to transfer the above inmate from Baptist Hospital Century CI to RMC for medical services.
   MR. ZOESCH: Okay. Okay. Thank you.
   MS. KIMBRELL: Is that it? I have some. I want to make sure you are done.
   MR. ZOESCH: Yep, go ahead.
        EXAMINATION
BY MS. KIMBRELL:
Q  Christine, you mentioned earlier that your role, as it related to the care being given by Baptist, was you were responsible as the payer, is that what you said?
A  Yes, Corizon was the payer.

Page 111

Q  Okay. At any point, did your role in documenting what was occurring at Baptist Hospital, relaying that information to other people at Corizon, or any other role that you had, was that affected in any way by the cost involved in the stay for Mr. Joyce at Baptist Hospital?
A  No.
Q  Okay. The decision to transport Mr. Joyce by DOC van, as recommended by the hospital, did the cost involved of any potential transport, either by van or ambulance, or anything, play in any way into your acceptance of the hospital's recommendation?
A  No.
Q  Okay. You talked a little bit about the InterQual system.
A  Uh-huh.
Q  And just so we are clear, throughout Mr. Joyce's stay at Baptist Hospital, as you entered information in in answering the questions, at any point was there a time where any of the treatment that Baptist Hospital, where the InterQual system indicated that it wasn't necessary, or that there was some problem with it?
A  No.
Q  You never had a situation in Mr. Joyce's case

Page 112

where the information you entered into InterQual, it prompted some review by Dr. Cherry because what he was receiving at Baptist was too expensive, or was beyond what Corizon believed was necessary?
A  No.
Q  Okay. And just so we are clear as well, on Exhibit 3, in the SYSM, where you have it marked urgent, you indicated that your understanding of marking it urgent was that the transport should happen that day, correct?
A  Yes.
Q  Okay. Nothing about your use of urgent related to the state of Mr. Joyce's medical condition at the time of discharge, correct?
A  Correct.
Q  It was simply for timing purposes for DOC?
A  Correct.
Q  Give me just a moment.
   The hospital log that you looked at in Exhibit 5, when that was created by you on a daily basis and disseminated between the parties that you discussed, including Dr. Cherry, beyond submitting this log to them, was there any sort of follow-up where the log was discussed with those same parties?
A  Not all the parties. The regional medical

Page 113

directors and the UM nurses had a daily call.
Q  Okay. Tell me what that was about.
A  We reviewed every -- each of the hospital cases, we reviewed what was clinically currently going on with the patient.
Q  Okay. And when you say you reviewed that, was it you simply taking a look at the information that had been provided by the various hospitals and just keeping everyone informed on what was happening?
A  Yes.
Q  Okay. At no point during these daily calls was there any discussion about recommendations for treatment, correct?
A  There would be discussion of the current treatment plan, which would include patient needs to have.
Q  And that was a discussion of the treatment plan that had been presented through the information from the various hospitals?
A  Yes.
Q  And the hospital log that we are looking at here in Exhibit 5, that was a log that you kept for all of the inmates who are hospitalized across the regions, right?
A  Yes.

Case 3:16-cv-00449-RV-GRJ   Document 196-2   Filed 04/11/18   Page 3 of 3

6/20/2017                          Chandra Kantor vs Warden John Sloan, et al.
Deposition of Christine Nobles - transcript    3:16-CV-449-RV-GRJ                30 (114 - 117)

Page 114

1  Q  Okay. So this log shows Hanuman Joyce, but
2  you would have entries like that for all of the inmates
3  who are hospitalized on a given day?
4  A  Yes.
5  Q  Okay. So what we are seeing here is not
6  something you kept because you felt concern for some
7  reason for this particular inmate?
8  A  No. You have removed all the other peoples'
9  names.
10 Q  And the calls that you had on a regular basis
11 were as to all inmates across all hospitals in the
12 different regions, right?
13 A  Yes.
14     MS. KIMBRELL: Okay. All right. That's all I
15 have. Thank you.
16         FURTHER EXAMINATION
17 BY MR. COOK:
18 Q  Just one question. In -- and you may have
19 answered this, so I apologize. But when you say the
20 Baptist doctor approved van transport, was there any
21 indication that they knew that it would be for a
22 multi-hour trip?
23     MS. KIMBRELL: Object to the form.
24     THE WITNESS: I don't know what they were.
25     MR. COOK: Okay. Thanks. No other questions.

Page 115

1  MS. KIMBRELL: Anybody else?
2  MS. PALMER: No.
3  MS. KIMBRELL: All right. And we will read.
4  That's it. We are done.
5     (Whereupon, the deposition was concluded at
6  1:28 p.m., and the witness did not waive reading and
7  signing.)

Page 116

CERTIFICATE OF OATH

STATE OF FLORIDA )
COUNTY OF LEON   )

I, the undersigned authority, certify that the above-named witness personally appeared before me and was duly sworn.

WITNESS my hand and official seal this 30th day of June, 2017.

DEBRA R. KRICK
NOTARY PUBLIC
COMMISSION #GG015952
EXPIRES JULY 27, 2020

Page 117

CERTIFICATE OF REPORTER

STATE OF FLORIDA )
COUNTY OF LEON   )

I, DEBRA R. KRICK, Professional Court Reporter, certify that the foregoing proceedings were taken before me at the time and place therein designated; that my shorthand notes were thereafter translated under my supervision; and the foregoing pages, numbered 4 through 115, are a true and correct record of the aforesaid proceedings.

I further certify that I am not a relative, employee, attorney or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorney or counsel connected with the action, nor am I financially interested in the action.

DATED this 30th day of June, 2017.

DEBRA R. KRICK
NOTARY PUBLIC
COMMISSION #GG015952
EXPIRES JULY 27, 2020